# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
COLE TAYLOR BANK:

**BEN T. CAUGHEY**
**BRIAN J. PAUL**
Ice Miller LLP
Indianapolis, Indiana

ATTORNEYS FOR CO-APPELLEE
CIBM BANK:

**SHAWNA MEYER EIKENBERRY**
**WENDY W. PONADER**
Faegre Baker Daniels LLP
Indianapolis, Indiana

ATTORNEYS FOR THE NON-PARTY
LAWYERS:

**TODD A. RICHARDSON**
**JOSEPH P. ROMPALA**
**KEVIN A. MORRISSEY**
Lewis & Kappes, P.C.
Indianapolis, Indiana

FILED

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DEBRA MINOTT, in her official capacity as Secretary of the Family and Social Services Administration; FAITH LAIRD, Director of the Division of Aging; PATTI BAILEY, Coordinator of the Residential Care Assistance Program, | ) ) ) ) ) ) ) |
| Appellants-Defendants, | ) ) |

vs.                                      )   No. 49A05-1305-PL-213
                                         )
LEE ALAN BRYANT HEALTH CARE              )
FACILITIES, INC.; PARKVIEW               )
RESIDENTIAL CARE CENTER, L.L.C.;         )
PARKE COUNTY RESIDENTIAL CARE            )
CENTER, L.L.C.; WESTPARK HEALTH          )
CARE FACILITIES, L.L.C.; CHERYL A.       )
HOLLAND; ROSS FISHER; PATRICK            )
ZABORSKI; and BRYAN FRISON,              )
                                         )
        Appellees-Plaintiffs.            )

_____

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David J. Dreyer, Judge
Cause No. 49D10-0911-PL-51397

_____


**November 7, 2013**


**OPINION - FOR PUBLICATION**


**ROBB, Chief Judge**

<u>Case Summary and Issue</u>

The State of Indiana appeals from the trial court's order denying its request for restitution for damages paid under a judgment reversed by this court, raising the following issue for our review: whether the trial court improperly denied the State's request for restitution. Concluding the trial court erred in denying the State's motion for restitution, we reverse and remand for further proceedings not inconsistent with this opinion.

2

Facts and Procedural History

In February 2010, a number of residential care facilities (the "Providers") which provide services funded by the Family and Social Services Administration's ("FSSA") Residential Care Assistance Program ("RCAP") filed suit against the FSSA after it suspended funding for new RCAP residents and imposed fixed reimbursement rates. Following a bench trial, the Providers were awarded damages in the amount of $176,664.25. In June 2011, the State appealed and requested a stay of the judgment pending appeal. The State's request for a stay was denied by both the trial court and the Indiana Court of Appeals.

In September 2011, the State filed a Notice of Tender of Judgment and Motion for Apportionment and Assignment of Priority and attached copies of attorney liens filed by Williams, Bax & Saltzman, P.C. and Lewis & Kappes (the "Law Firms") pursuant to Indiana Code section 33-43-4-1. Shortly after, the State filed a Notice of Additional Garnishment Proceedings that affected the Providers' award, which involved Cole Taylor Bank and CIBM Bank, both of which were creditors of the Providers. Both Cole Taylor Bank and CIBM Bank intervened in the suit, claiming an interest in the judgment proceeds.

On November 2, 2011, the Providers submitted to the trial court an agreed order, providing for the release of the damages award held by the clerk, and the trial court entered the agreed order as requested on November 4, 2011. The agreed order provided for the disbursement of the $176,664.25 judgment proceeds as follows: $72,399.22 to the Law Firms, $65,259.48 to Cole Taylor Bank, and separate payments of $9,175.32 and $29,830.23 to CIBM Bank.

3

On June 8, 2012, this court issued an opinion reversing the trial court's judgment and remanding the case for further proceedings. See Gargano v. Lee Alan Bryant Health Care Facilities, Inc., 970 N.E.2d 696 (Ind. Ct. App. 2012). That decision did not make any determination regarding restitution. Id.

On October 19, 2012, the State filed a Motion for Entry of Final Judgment in the trial court, which did not include mention of the $176,664.25 damages award. The trial court entered the requested final judgment order on November 8, 2012, vacating its original order awarding $176,664.25 in damages to the Providers. On January 4, 2013, the State filed a motion to set aside the agreed order and requested that the trial court order the Law Firms, Cole Taylor Bank, and CIBM Bank to return the money disbursed to them pursuant to the agreed order. The trial court denied the State's request for restitution on February 1, 2013 and denied the State's motion to correct error on April 10, 2013. This appeal followed.

Discussion and Decision

I.      Standard of Review

An order for restitution is within the trial court's discretion and will be reviewed only for an abuse of that discretion. Roach v. State, 695 N.E.2d 934, 943 (Ind. 1998). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances or if the decision is contrary to law. Vandenburgh v. Vandenburgh, 916 N.E.2d 723, 728 (Ind. Ct. App. 2009).

II.      Restitution

The State argues on appeal that the trial court abused its discretion by denying its

4

motion for restitution, which requested that the Law Firms and other creditors of the Providers be liable in restitution for funds paid pursuant to a judgment that was later reversed. The Law Firms, in their appellees' brief, argue that the State's motion for restitution was untimely, and even if the motion was timely filed, they contend that restitution following a reversal on appeal cannot be extended to non-party creditors.

## A. Timeliness

The Law Firms dedicate much of their brief to the position that the State's motion for restitution was untimely. They maintain that the judgment entered by the trial court on November 8, 2012 was a final judgment which disposed of the entire suit. Thus, they believe that the State's motion for restitution must be treated as a post-judgment motion under either Indiana Trial Rule 59, as a motion to correct error, or Indiana Trial Rule 60(B), as a motion for relief from judgment. The Law Firms contend that the requirements were not met for either Rule 59 or Rule 60(B). In response, the State argues the November 8th order was not a final judgment because it did not address the issue of restitution and that the trial court maintained jurisdiction over the suit after the November 8th order. We find the State's position persuasive.

A "final judgment" is a judgment that "disposes of all issues as to all parties, to the full extent of the court to dispose of the same, and puts an end to the particular case as to all of such parties and all of such issues." Bueter v. Brinkman, 776 N.E.2d 910, 912-13 (Ind. Ct. App. 2002) (citation omitted). "A final judgment reserves no further question or direction for

5

future determination." Id. at 913 (citation omitted).

Although titled a "Final Judgment," the trial court's November 8th order does not qualify as a final judgment under the definition stated above. That order, pursuant to this court's decision to reverse, set aside the trial court's original findings of fact, conclusions of law, and judgment in favor of the Providers and entered judgment in favor of the State. The order did not, however, address the issue of restitution for the State's payment of $176,664.25 erroneously ordered by the trial court. Once the trial court's original judgment was set aside, the issue of restitution was the proverbial elephant in the room, one which neither the parties nor the trial court could have ignored. Following the trial court's November 8th judgment, did the Providers and their creditors believe restitution was a non-issue—that the State simply chose to let them keep $176,664.25 that was paid pursuant to a reversed judgment? We think not.

The issue of restitution arose only after this court's decision to reverse the trial court's judgment. The trial court's November 8th order neither addressed nor disposed of that lingering issue. Therefore, it was not a true final judgment. The State's motion for restitution requested relief that was not provided for or even contemplated by the trial court's order setting aside the original judgment in favor of the Providers. Because the State's motion did not seek relief from that judgment, we do not believe the State's motion should be treated as a request for post-judgment relief under Rule 59 or Rule 60(B)—untimely or otherwise.

Concluding that the State's request for restitution was not untimely, we next address

6

its claim for restitution on the merits.

## B. Restitution from Non-parties

The State seeks restitution from the non-party Law Firms and creditor banks in the amount of $176,664.25. "A person who is unjustly enriched at the expense of another is subject to liability in restitution." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 (2011). The equitable principle of restitution considers the issue in this case: payment of a judgment subsequently reversed on appeal.

> A person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right to restitution of the excess.

RESTATEMENT (FIRST) OF RESTITUTION § 74 (1937). When a request for restitution rests on the reversal of a judgment, liability for restitution may extend beyond the named parties in the suit. "If payment has been made to the judgment creditor or to his agent, or to an officer who has paid the judgment creditor, upon reversal of the judgment the payor is entitled to receive from the creditor the amount thus paid with interest . . . ." RESTATEMENT (FIRST) OF RESTITUTION § 74 cmt. d (1937).

It is the State's position that the Law Firms and creditor banks are judgment creditors from whom the State may obtain restitution. The Law Firms, however, disagree and direct this court to another comment to Section 74 of the Restatement, which addresses restitution from an attorney or agent of a judgment creditor. That comment provides:

> An attorney or other agent of the judgment creditor who receives payment
> from the judgment debtor or who receives the proceeds of sale of the debtor's

things and who pays it to the judgment creditor before reversal is not liable if the judgment was valid before reversal and if he had no knowledge of any fraud used in securing it. Under the same conditions he is under no duty to repay money which he received on account of the judgment creditor and which he retains as payment for services or for a debt owed by the judgment creditor to him (see Illustration 20) since he received the money as a bona fide purchaser.

RESTATEMENT (FIRST) OF RESTITUTION § 74 cmt. h (1937). The question for this court, it seems, is whether the Law Firms were judgment creditors or merely entities which received payment from a judgment creditor (the Providers) for services rendered.

A "judgment creditor" is defined as

[a] person in whose favor a money judgment has been entered by a court of law and who has not yet been paid. One who has obtained a judgment against his debtor, under which he can enforce execution. A person in whose favor a money judgment is entered <u>or a person who becomes entitled to enforce it</u>. Owner of an unsatisfied judgment.

Pond v. McNellis, 845 N.E.2d 1043, 1059-60 (Ind. Ct. App. 2006) (quoting BLACK'S LAW DICTIONARY 844 (6th ed. 1990)) (emphasis added), trans. denied. The State relies heavily on our decision in Pond, which held that a non-party attorney was a judgment creditor and therefore subject to restitution. Id. at 1059-61. Pond involved an award of attorney fees by the trial court in a dissolution of marriage. The award of attorney fees was reversed on appeal, and Pond sought restitution from his ex-wife's attorney, McNellis. This court determined that McNellis was a judgment creditor who was entitled to enforce the judgment. That conclusion was based on two circumstances in the case. First, the statute governing attorney fees in an action for dissolution of marriage provided that "[t]he court may order the amount to be paid directly to the attorney, who may enforce the order in his name." Id. at

8

1060 (citing Ind. Code § 31-1-11.5-16 (Supp. 1995), now codified as Ind. Code § 31-15-10-1) (emphasis omitted). Second, the court noted that McNellis had "filed an attorney lien." Id.

The Law Firms argue that Pond is distinguishable because the Law Firms' fees were not a result of a court ordered award of attorney fees and because there is no similar statute specifically granting direct payment to the Law Firms. The Law Firms also point out that the reasoning in Pond relied at least in part upon a Washington Court of Appeals decision, In re Marriage of Mason, 740 P.2d 356 (Wash. Ct. App. 1987), which was later distinguished by the Washington Supreme Court in a case more factually similar to this one, Ehsani v. McCullough Family P'ship, 159 P.3d 407 (Wash. 2007). Indeed, the decisions in Pond and Mason relied upon a type of attorney fee statute that has no bearing in this case, and the court in Ehsani distinguished Mason on that ground, concluding that the attorney was not a real party in interest without the presence of such a statute and thus not liable for restitution. Id. at 411-13. Nevertheless, we believe that the Law Firms and creditor banks in this case were judgment creditors, and Ehsani is factually different from this case.

In Ehsani, the judgment was paid into the attorney's client trust account, and "[a]t the direction of his clients," the attorney distributed the proceeds to the clients' creditors and to himself. Id. at 408.[1] By contrast, the creditors in this case were not paid at the voluntary

---

[1] The court in Ehsani believed that the facts before it "mirror[ed]" those of Illustration 20, relating to comment h to Section 74 of the Restatement. Id. at 410 (citing RESTATEMENT (FIRST) OF RESTITUTION § 74 cmt. h, Illustration 20 (1937)) ("A obtains a valid judgment against B for $3000. B pays the amount of the judgment to C, A's attorney. At A's direction C expends $1000 to satisfy A's creditors and retains $2000 as compensation for his services in this suit and in previous ones. Upon reversal of the judgment, B is not entitled to restitution from C.").

direction of the Providers. The creditors in this case were paid directly from judgment proceeds still in the hands of the trial court clerk, pursuant to a court order on the heels of liens filed against the judgment.

The Law Firms attempt to liken their payment to the client-directed payment in Ehsani, but in reality, the Providers here had no choice in the matter. Liens filed against the Providers' judgment entitled the Law Firms to the judgment proceeds. As this court has previously stated, "an attorney's lien . . . take[s] priority over the rights of other creditors, including the judgment creditor." In re Marriage of Hollingsworth, 671 N.E.2d 165, 168 (Ind. Ct. App. 1996) (emphasis added). If the creditors' rights to the judgment were greater even than the Providers' rights, we see no logical reason to treat them differently for the purposes of restitution. Given their entitlement to the judgment proceeds, the appellees were, in effect, judgment creditors.

Moreover, the agreed order entered by the trial court on November 4, 2011 gave the Law Firms and creditor banks the right to enforce the judgment. Indiana Trial Rule 71 provides: "When an order is made in favor of a person who is not a party to the action, he may enforce obedience to the order by the same process as if he were a party . . . ." Because the creditors had the power to enforce the judgment in their own favor, they are judgment creditors and should be treated as such for the State's request for restitution.

### Conclusion

The State's request for restitution was timely, and the Law Firms, Cole Taylor Bank, and CIBM Bank were judgment creditors or their lawful equivalent and are therefore liable

for restitution. Accordingly, we conclude that the trial court erred by denying the State's request for restitution.

Reversed and remanded.

RILEY, J., and KIRSCH, J., concur.