## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 12 2015, 8:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Donald E. Wertheimer
South Bend, Indiana

ATTORNEY FOR APPELLEE

Robert W. Mysliwiec
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Melvin H. Sandock, et al.,

*Appellants-Defendants,*

v.

Garland Aschenbrenner,

*Appellee-Plaintiff*

May 12, 2015

Court of Appeals Cause No. 71A05-1405-PL-244

Appeal from the St. Joseph Circuit Court.

The Honorable Steven Hostetler, Judge.

Cause No. 71C01-0712-PL-317

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellants-Plaintiffs, Melvin H. Sandock Inter Vivos Revocable Trust and Betty J. Sandock Inter Vivos Revocable Trust, Melvin H. Sandock, Betty Sandock, and Ruby Sandock (collectively, Sandock), appeal the trial court's summary judgment in favor of Appellees-Defendants, Garland Aschenbrenner and Winifred Aschenbrenner (collectively, the Aschenbrenners). The Aschenbrenners appeal the trial court's denial of their request for attorney fees.

We affirm.

## ISSUE

Sandock raises five issues which we consolidate and restate as the following single issue: Whether the trial court erred in finding that, as a matter of law, the October 17, 2010 Supplement to the lease agreement is enforceable and concluding that, as a result of the Supplement, the Aschenbrenners are released and discharged from any personal liability under their guarantees.

The Aschenbrenners raise one issue which we state as: Whether the trial court properly denied their request for attorney fees.

## FACTS AND PROCEDURAL HISTORY

The present action has a convoluted history as it has been continuously in some state of litigation for the past eight years. We are called upon today to decide the parties' second appeal. Because of its intricate factual matrix, we will rely upon the facts as narrated in our memorandum opinion of *Aschenbrenner v.*

*Melvin H. Sandock Inter Vivos Revocable Trust* (*Aschenbrenner*), No. 71A04-1201-PL-96 (Ind. Ct. App. Dec. 11, 2012).

[6]     South Bend Carpetland USA, Inc. d/b/a Abbey Carpets and Floors (Carpetland) is the lessee of a commercial building located at State Road 933 North in South Bend, Indiana (the Property). Sandock, as lessor of the Property, entered into a lease for the premises with Carpetland for an initial term of seven-and-a-half years and with the potential for renewal (the 1985 Lease). Carpetland's occupancy of the Property began in January 1985, at which time Carpetland undertook significant renovations to prepare the Property for opening. The 1985 Lease contained a guaranty signed by the Aschenbrenners, by which they guaranteed the performance of the obligations of the lessee, Carpetland, for a period of three years beginning March 1, 1985, and terminating February 28, 1988. In 2000, Sandock and Carpetland renewed the lease, extending the term from March 1, 2000 until May 31, 2010 (the 2000 Lease). The Aschenbrenners remained guarantors on the 2000 Lease. Both Leases required Carpetland to obtain insurance and pay the premiums for fire and extended coverage on the property.

[7]     On June 1, 2010, the Aschenbrenners sold their stock in Carpetland to Mark and Elizabeth McCray (collectively, McCrays), who became the new owners. That same day, a new lease became effective between Sandock, Carpetland and the McCrays. (the 2010 Lease). Following the execution of the 2010 Lease, a supplement (2010 Supplement) was effectuated, which read:

> [I]n the event the court determines that the defendants [in the cause before us] failed to properly allocate, handle, or otherwise effectuate reasonably necessary insurance repairs, said failure or failures on the part of the defendants [in the cause before us] should likewise not be transferred to the current Lessee. In this regard, [Sandock] agrees that any obligation of [Carpetland], now owned by Mark and Elizabeth McCray will not be pursued to the extent the court imposes liability upon the Aschenbrenners and [Carpetland] in [the cause before us] but, rather will pursue the Aschenbrenners, only, with respect to such or any ruling or order (or judgment).

(Appellant's App. p. 150). A similar provision was included with respect to "the cost of replacing existing roof or roofs." (Appellant's App. p. 150).

[8] Under the provisions of the 1985 Lease, Carpetland was required to install a new roof on the Property. In 1989, Carpetland installed a new flat, rubber roof on part of the building; the remainder of the building, known as the warehouse, had a pitched metal roof. The new rubber roof carried a ten-year warranty. Sandock became concerned about maintenance and repairs on the rubber roof in 1991 or sometime shortly thereafter. Throughout the decade of the 90s, there were leaks in the rubber roof that were resolved by Carpetland by patching rather than ordering more permanent and extensive repairs. Carpetland employed unskilled contractors for the roof repairs, and no permits were ever taken out for the work done. Carpetland made no claim under the warranty for the rubber roof.

[9] During the term of the 2000 Lease, Carpetland made several claims under the casualty insurance policies that covered the Property. In total, Carpetland collected $62,893.11 in payments from the insurance carriers, pertaining to damage to both the rubber and metal roofs, gutters, overhead doors, fencing,

and other items in the interior and exterior of the building. However, the money expended to make repairs to the Property was less than the amount of insurance proceeds collected by Carpetland. The commencement and completion of many of the repairs to the Property was delayed, and no permits were taken out by Carpetland or by any of the workers contracted with to undertake these repairs.

[10] On December 31, 2007, Sandock filed a Complaint against Carpetland and the Aschenbrenners, alleging that during the term of the 1985 and 2000 Leases Carpetland had received checks from insurance companies for casualty losses, that the proceeds were not properly used to restore the Property to its pre-loss condition, and that the insurance checks should have been made payable to Sandock so Sandock could ensure that the disbursements were properly made for repairs to the property. On February 17, 2009, Sandock filed an amended Complaint, adding a second count, which alleged that the rubber roof was in need of replacement, and that pursuant to the provisions of the 2000 Lease it was Carpetland's responsibility to arrange the necessary repairs. On February 25, 2009, Carpetland filed a motion to dismiss the amended Complaint, and on April 16, 2009, the trial court granted the motion to dismiss but cautioned Sandock to only file amendments to the Complaint with leave from the trial court. On June 29, 2009, after receiving leave from the trial court to file another amended Complaint, Sandock filed its third amended Complaint, which contained two counts: the first reiterating the claim concerning the insurance proceeds and the second alleging that Carpetland properly failed to

maintain the rubber roof, causing it now to be prematurely in need of replacement.

[11] Carpetland filed a motion for summary judgment, and after a hearing, the trial court granted partial summary judgment as to Sandock's claim that insurance checks had been forged or otherwise improperly secured by Carpetland, but denied summary judgment with respect to the handling of the insurance proceeds and the roof maintenance. Trial on the remaining issues commenced on September 8, 2010. Prior to its commencement, Sandock sought to amend his Complaint to seek additional damages for a generalized failure to maintain and repair the Property. The trial court denied the amendment and directed Sandock to proceed in a separate cause.[1] On June 13, 2011, the trial court entered its findings of fact and conclusions thereon, awarding Sandock $180,183.11 in damages, as well as reasonable attorney fees of $72,037.50. Carpetland and the Aschenbrenners appealed.

[12] On appeal, we noted that "a plain reading of [the 2010 Supplement] may lead to the conclusion that [Carpetland] has no obligation under the 2000 [L]ease and that Sandock is releasing the corporation from its obligation under the 2000 [L]ease." *Aschenbrenner*, at *5. "Therefore, to the extent that this [2010 Supplement] released [Carpetland] from liability, it also released [the Aschenbrenners] from liability. Although this [2010 Supplement] was admitted

---

[1] Sandock filed a Complaint in 2011, resulting in a summary judgment, discharging the Aschenbrenners from any liability. Sandock's appeal is currently pending before this court as Cause No. 71A04-1408-PL-367.

at trial as an exhibit and was examined by the trial court, the trial court made no findings concerning it or its effect on liability. The trial court erred when it failed to do so." *Id*. Accordingly, we vacated the trial court's judgment and remanded with instruction to, in pertinent part, evaluate the effect of the 2010 Supplement on the Aschenbrenners' liability under the 1985 and 2000 Lease.

[13] On January 21, 2014, after remand of the cause to the trial court, the Aschenbrenners filed their motion for summary judgment, designation of evidence and memorandum. Two days later, on January 23, 2014, Sandock filed his motion for summary judgment, memorandum of law in support of his motion, and designation of evidence in support thereof. On February 7, 2014, the Aschenbrenners filed a response to Sandock's motion for summary judgment. On February 27, the trial court entered summary judgment on the parties' cross-motions, granting the Aschenbrenners' summary judgment motion and denying Sandock's. Finding the 2010 Supplement "enforceable as a matter of law," and constituting "a material alteration of the obligations of [Carpetland] to Sandock[]," the trial court on remand concluded that the 2010 Supplement "released and discharged" the Aschenbrenners "from any personal liability under their guarantee." (Appellant's App. pp. 31, 36).

[14] On March 20, 2014, the trial court entered an order releasing the funds which had been garnished by Sandock between the trial court's judgment entered on June 13, 2011, and its vacating by this court on December 11, 2012. On March 31, 2014, Sandock filed a motion to correct error, which was denied on April 25, 2014. On May 27, 2014, Sandock filed his notice of appeal. Thereafter, on

July 25, 2014, Sandock filed a Trial Rule 60(B) motion for relief from judgment based on newly discovered evidence. In its motion, Sandock presented the trial court with a Termination Agreement, entered into that same day between Sandock, Carpetland, and the McCrays, agreeing to a mutual termination of the 2010 Supplement whereby the Supplement "shall have no force or effect whatsoever." (Appellant's App. p. 59). This Termination Agreement was made effective retroactively as of October 27, 2010. The trial court denied Sandock's T.R. 60(B) motion on August 22, 2014. On October 3, 2014, Sandock amended his notice of appeal to include an appeal to the trial court's denial of his T.R. 60(B) motion and the trial court's restitution order, entered March 20, 2014.

Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Summary Judgment*

### A. *Standard of Review*

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). "A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth . . . , or if the undisputed facts support conflicting reasonable inferences." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009).

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

We observe that, in the present case, the trial court entered findings of fact and conclusions of law in support of its Judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id.* However, such findings offer this court valuable insight into the trial court's rationale for its decision and facilitate appellate review. *Id.*

## B. *Analysis*

### 1. *2010 Supplement*

[19] Sandock contends that the trial court erred by concluding that the 2010 Supplement is enforceable as a matter of law and its applicability resulted in the discharge of the Aschenbrenners, as guarantors under both Leases. Specifically, Sandock advances several grounds of trial court error, which we will analyze in turn.

### a. Consideration

[20] First, Sandock argues that the 2010 Supplement is unenforceable as it is not supported by consideration. The existence of a contract is a question of law. *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 813 (Ind. 2009). Formation of a contract requires an offer and acceptance, consideration, as well as a meeting of the minds of the contracting parties. *Id*. at 812-13. In order for a contract to be valid and enforceable, the parties must intend to be bound, and the essential terms must be reasonably definite and certain. *Sands v. Helen HCI, LLC*, 945 N.E.2d 176, 180 (Ind. Ct. App. 2011), *trans. denied*. It is well settled that parties may mutually modify a contractual undertaking and may execute a supplementary or separate contract. *Myers v. Maris*, 326 N.E.2d 577, 582 (Ind. Ct. App. 1975). However, this new obligation must be supported by consideration. *Id.*

[21] "To constitute consideration, there must be a benefit accruing to the promisor or a detriment to the promisee." *Paint Shuttle, Inc. v. Cont'l Cas. Co.*, 733 N.E.2d 513, 522 (Ind. Ct. App. 2000), *trans. denied*. A benefit is a legal right given to the promisor to which the promisor would not otherwise be entitled. *DiMizio v.*

*Romo*, 756 N.E.2d 1018, 1023 (Ind. Ct. App. 2001), *trans. denied*. A detriment on the other hand is a legal right the promisee has forborne. *Id.* "The doing of an act by one at the request of another which may be a detrimental inconvenience, however slight, to the party doing it or may be a benefit, however slight, to the party at whose request it is performed, is legal consideration for a promise by such a requesting party." *Harrison-Floyd Farm Bureau Coop. Ass'n v. Reed*, 546 N.E.2d 855, 857 (Ind. Ct. App. 1989). In the end, "consideration—no matter what its form—consists of bargained-for exchange." *Horseshoe Hammond, LLC v. Ind. Dep't of State Revenue*, 865 N.E.2d 725, 729 (Ind. Tax Ct. 2007), *trans. denied*.

[22] Here, the trial court concluded:

> 2. There was consideration for the 2010 Supplement, which consideration includes the fact that the parties recited in the [2010 Supplement] that it was intended to clarify the terms of the 2010 Lease (for which there is indisputable consideration), and that Sandock[] wanted a ratification of [Carpetland's] promise to pay rent despite the disputes that are the subject of this lawsuit. Sandock[] received that ratification.

(Appellant's App. pp. 38-39). Insofar the trial court equated the promise to pay rent with consideration, we disagree as the "promise to do what one 'is already bound to do by law or by contract' is insufficient consideration." *Peters v. Kendall*, 999 N.E.2d 1030, 1035 (Ind. Ct. App. 2013) (quoting *Ritenour v. Mathews*, 42 Ind. 7, 14 (Ind. 1873)), *trans. denied*.

[23] Because our review is *de novo*, we can find consideration elsewhere. *See Hughes v. King*, 808 N.E.2d 146, 148 (Ind. Ct. App. 2004). In the 2010 Supplement,

"[t]he parties [] acknowledge that, even though Carpetland and the McCrays herein ha[ve] accepted the condition of the subject [P]roperty on an 'as is' basis, there are defects and problems with the subject building that existed and continue to exist as of June 1, 2010 which is the effective date of this lease." (Appellant's App. p. 149). Combined with the release granted by Sandock to the McCrays in which Sandock promises to pursue the Aschenbrenners for any liability of Carpetland, the McCrays accrued a benefit under the 2010 Supplement. *See Paint Shuttle, Inc.*, 733 N.E.2d at 522. Even though the McCrays accept that there are "defects and problems" with the Property, Sandock's promise not to pursue any legal action against them amounts to a "legal right to which they otherwise would not be entitled." (Appellant's App. p. 149); *DiMizio*, 756 N.E.2d at 1023. Accordingly, based on the designated evidence, we conclude that the 2010 Supplement is supported by sufficient consideration.[2]

### b. Circular Reasoning

Next, Sandock accuses the trial court of inserting a contradiction in its findings, which "arises from the irrational construction of the trial court in construing the

---

[2] In support of his argument, and throughout the analysis of other issues in his brief, Sandock relies and references the trial court's findings of its June 13, 2011 judgment. However, this court "vacate[d] the trial court's judgment and remand[ed] for further proceedings" consistent with our memorandum opinion in *Aschenbrenner*. *See Aschenbrenner*, at *6-7. Because vacating the judgment has the effect of restoring the parties to the positions they held before the judgment was pronounced, the judgment essentially no longer exists. *Eden United, Inc. v. Short*, 653 N.E.2d 126, 134 (Ind. Ct. App. 1995), *reh'g denied*. Therefore, we will not review Sandock's arguments with respect to the vacated opinion.

[2010 Supplement] to release Carpetland from liability." (Appellant's Br. p. 11). Rather, Sandock argues that "[t]he only rational construction of the [2010 Supplement] which could possibly be consistent with the intent of the parties is that the [2010 Supplement] did not release either Carpetland or the Aschenbrenners from any liability, which is what the [S]upplement actually says." (Appellant's App. p. 11). As such, Sandock asserts that it was never the intent of the parties to the 2010 Supplement to release Carpetland from liability.

[25] The goal of contract interpretation is to ascertain and give effect to the parties' intent as evidenced by the language of the agreement. *Goodrich Quality Theaters, Inc. v. Fostcorp Heating & Cooling, Inc.*, 16 N.E.3d 426, 434 (Ind. Ct. App. 2014), *aff'd on reh'g*, 16 N.E.3d 426 (Ind. Ct. App. 2014). If the language is clear and unambiguous, it must be given its plain and ordinary meaning. *Id.* A document is not ambiguous merely because parties disagree about a term's meaning; rather, language is unambiguous only if reasonable people could come to different conclusions as to its meaning. *Id.* If the language of the contract is unambiguous and the intent of the parties is discernible from the written contract, the court must give effect of the terms of the contract. *Hilbert v. Conseco Servs., LLC*, 836 N.E.2d 1001, 1008 (Ind. Ct. App. 2005), *trans. denied, cert. denied* 549 U.S. 884 (2006).

[26] The contested language in the 2010 Supplement reads:

> [I]n the event the court determines that the defendants [in the cause before us] failed to properly allocate, handle, or otherwise effectuate reasonably necessary insurance repairs, said failure or failures on the part of the defendants [in the cause before us] should likewise not be

> transferred to the current Lessee. In this regard, [Sandock] agrees that any obligation of [Carpetland], now owned by Mark and Elizabeth McCray will not be pursued to the extent the court imposes liability upon the Aschenbrenners and [Carpetland] in [the cause before us] but, rather will pursue the Aschenbrenners, only, with respect to such or any ruling or order (or judgment).

(Appellant's App. p. 150). This provision impliedly references the guarantee provision in the 2000 Lease in which the Aschenbrenners guaranteed the performance of Carpetland.

[27] A guarantee is "a promise to answer for the debt, default, or miscarriage of another person." *S-Mart, Inc. v. Sweetwater Coffee Co., Ltd.*, 744 N.E.2d 580, 585 (Ind. Ct. App. 2001) (citing 38 Am.Jur.2d Guarantee § 1 (1999)), *trans. denied*. "[I]t 'is an agreement collateral to the debt itself' and represents a 'conditional promise' whereby the guarantor promises to pay only if the principal debtor fails to pay." *Id*. Under Indiana common-law principles, when parties cause a material alteration of an underlying obligation without the consent of the guarantor, the guarantor is discharged from further liability whether the change is to his or her injury or benefit. *Id*. at 586 (citing *Goeke v. Merchants Nat'l Bank & Trust Co. of Indianapolis*, 467 N.E.2d 760, 765 (Ind. Ct. App. 1984), *trans. denied*). Thus "[g]uarantors and sureties are exonerated if the creditor by any act, done without their consent, alters the obligation of the principal in any respect or impairs or suspends the remedy for its enforcement." *Id*. A material alteration which will effect a discharge of the guarantor must be a change which, among others, "substantially increases the risk of loss to the guarantor."

*Cunningham v. Mid State Bank*, 503 N.E.2d 415, 416 (Ind. Ct. App. 1987), *reh.'g denied, trans. denied*.

[28] A plain reading of the 2010 Supplement leads to the conclusion that Sandock released Carpetland from any liability under the 2000 Lease. Even though the 2010 Supplement indicates that the Aschenbrenners will be pursued in case Carpetland is found liable, the provisions of the 2000 Lease clearly stipulate that without a prior finding of Carpetland's liability, the Aschenbrenners, as guarantors, cannot be held liable. Thus, as the 2010 Supplement released Carpetland, it, by necessity, also released the Aschenbrenners. In addition, the 2010 Supplement represents a material alteration to the terms of the 2000 Lease. By acceding that there are "defects and problems" with the Property, the 2010 Supplement substantially increased the exposed liability of the Aschenbrenners, as guarantors under the 2000 Lease. *See id*. Accordingly, as the designated evidence fails to support that the Aschenbrenners consented to this material alteration in Carpetland's obligation, they are now exonerated of their guarantee. *See S-Mart, Inc.*, 744 N.E.2 at 586.

[29] In an effort to avoid a complete release of the Aschenbrenners, Sandock appears to argue that because the release only covers the monetary liability of Carpetland, and not its non-monetary obligations under the 2010 Lease "to perform all repairs with skilled and licensed/bonded workers," the Aschenbrenners, by extension, are not released from guaranteeing these covenants. We disagree. The release clearly references any failures "to properly allocate, handle, or otherwise effectuate reasonably necessary

insurance repairs" as being part of the foregone liability under the 2010 Supplement. Consequently, we affirm the trial court's conclusion that the Aschenbrenners are released from liability by virtue of the 2010 Supplement.

### c. Restitution Order

[30] Between the entry of the trial court's judgment of June 13, 2011, in Sandock's favor and this court's vacating the trial court's judgment on December 11, 2012, Sandock garnished certain accounts of the Aschenbrenners and collected approximately $55,000 in funds. On March 20, 2014, after its summary judgment in favor of the Aschenbrenners and on motion by the Aschenbrenners, the trial court ordered these funds released. Compounding on his argument that the 2010 Supplement is invalid and the Aschenbrenners remain personally liable for the obligations of Carpetland, Sandock now objects to the release of the garnished funds.

[31] Finding that the release under the 2010 Supplement in favor of the Aschenbrenners is effective and encompasses both Carpetland's monetary and non-monetary obligations, we conclude that the trial court properly ordered the return of the funds garnished by Sandock between the entry of the trial court's judgment of June 13, 2011, and its vacating on December 11, 2012. *See Minott v. Lee Alan Bryant Health Care Facilities, Inc.*, 998 N.E.2d 273, 277 (Ind. Ct. App. 2013) (where the court held that a party was entitled to restitution of damages which were paid pursuant to a judgment which was reversed by the court of appeals and remanded for further proceedings), *trans. denied*.

## 2. *Appeal from T.R.60(B) Motion*

In a continuing challenge to the validity and enforceability of the 2010 Supplement, Sandock contends that he "and Carpetland entered into a mutual rescission of the [2010 Supplement] which returned the parties to the status quo ante" of the 2000 Lease. (Appellant's Br. p. 12). Despite Sandock's notice of appeal, filed on May 27, 2014, he presented this rescission to the trial court by way of an Indiana Trial Rule 60(B) motion for relief from judgment on July 25, 2014.

Ind. Appellate Rule 8 provides, in part, that the "[c]ourt of [a]ppeals acquires jurisdiction on the date the Notice of Completion of Clerk's Record is noted in the Chronological Case Summary." It is well-established that the trial court is deprived of further jurisdiction on the date the record of proceedings is filed with the clerk of the supreme court and the court of appeals. *Schumacher v. Radiomaha, Inc.*, 619 N.E.2d 271, 273 (Ind. 1993). This rule "facilitates the orderly presentation and disposition of appeals and prevents the confusing and awkward situation of having the trial and appellate courts simultaneously reviewing the correctness of the judgment." *Donahue v. Watson*, 413 N.E.2d 974, 976 (Ind. Ct. App. 1980), *reh'g denied*, *trans. denied*.

Recognizing the jurisdictional problems created by the consideration of T.R. 60(B) motions during the pendency of an appeal, our supreme court has created a procedure that parties must follow while a judgment is on appeal. *See Logal v. Cruse*, 368 N.E.2d 235, 237 (Ind. 1977). A party seeking to file a T.R. 60(B)

motion must file a verified petition with the appellate court seeking leave to file the motion. *Id*. If the appellate court determines that the motion has sufficient merit, it will remand the entire case to the trial court for plenary consideration of the T.R. 60(B) grounds. *Id*. Such remand will terminate the appeal. *Id*.

[35] Here, Sandock filed his notice of appeal on March 27, 2014. Then, on July 25, 2014, prior to the completion of the clerk's record, Sandock filed a T.R. 60(B) motion with the trial court. On August 13, 2014, the clerk filed his notice of completion of clerk's record, and this court acquired jurisdiction over Sandock's appeal. Nine days later, on August 22, 2014, the trial court denied Sandock's T.R. 60(B) motion.

[36] We recognize that Sandock could not have followed the *Logal* procedure on July 25, 2014, since this court did not yet have jurisdiction. Nevertheless, the fact remains that the trial court was deprived of its jurisdiction to consider Sandock's motion when the clerk's notice of completion of record was filed on August 13, 2014. On that date, this court acquired jurisdiction and Sandock was obligated to follow the *Logal* procedure if he still wished for the trial court to consider his T.R. 60(B) motion. *Southwood v. Carlson*, 704 N.E.2d 163 165 (Ind. Ct. App. 1999) (noting that even if the T.R. 60(B) motion is filed before the appellate court obtains jurisdiction, once the appellate court acquires jurisdiction, the movant becomes obligated to follow the *Logal* procedure); *see also Am. Fam. Mut. Ins. Co. v. Federated Mut. Ins. Co.*, 800 N.E.2d 1015, 1022 (Ind. Ct. App 2004) (noting "the avoidance of piecemeal litigation, the concerns regarding expenditure of resources, and disallowing a 'second bite at the apple'"

as "long-standing considerations" in appellate courts). As Sandock failed to follow the appropriate proceedings, he has forfeited his T.R. 60(B) motion for our review.[3]

## II. *Attorney Fees*

### 1. *Indiana Code section 34-52-1-1*

[37]    The Aschenbrenners also appealed the trial court's summary denial of their request for attorney fees pursuant to Ind. Code § 34-52-1-1. Under the statute, attorney fees are awarded when a litigant has pursued a claim or defense that is frivolous, unreasonable or groundless. *See* I.C. § 34-52-1-1(b). In reviewing a trial court's decision to award attorney fees pursuant to I.C. § 34-52-1-1, we are presented with mixed questions of fact and law. *Kahn v. Cundiff*, 533 N.E.2d 164, 166-67 (Ind. Ct. App. 1989), *summarily aff'd,* 543 N.E.2d 627 (Ind. 1989). Initially, we review the trial court's findings of fact under the clearly erroneous standard. *Id*. at 167. We then review *de novo* the trial court's legal conclusion that a party either (1) brought an action or defense on a claim or defense that is frivolous, unreasonable or groundless, or (2) continued to litigate the action or defense after the party's claim or defense became clearly frivolous,

---

[3] Because we cannot review Sandock's T.R. 60(B) motion, we express no opinion on Sandock's attempt to bring "newly *created* evidence" within the province of a rule which provides for the eventuality of "newly *discovered* evidence." *See* T.R. 60(B). Specifically, it should be noted that the Termination Agreement, in which Sandock and the McCrays mutually agreed to the termination of the 2010 Supplement—with a retroactive effective date of October 27, 2010—was entered into on the same day Sandock filed this T.R. 60(B) motion, which claimed to have *discovered* this new evidence.

unreasonable or groundless, or (3) litigated the action in bad faith. *Id.* Finally, we review the trial court's decision to award attorney fees and the amount thereof under an abuse of discretion.

[38] The Achenbrenners contend that they are entitled to attorney fees because the claim brought against them by Sandock became "groundless" "by the December 11, 2012 [m]emorandum [d]ecision by the [c]ourt," as this memorandum opinion "makes it clear that [Sandock] has no claim against the Aschenbrenners." (Appellees' Br. p. 14). In essence, the Achenbrenners base their request for attorney fees on the argument that Sandock continued the litigation for more than two years after the appellate memorandum opinion held "that they were discharged of any guaranty liability." (Appellee's Br. p. 15). We disagree.

[39] Our memorandum opinion entered December 11, 2012, vacated the trial court's decision in favor of Sandock and remanded to the trial court with the instruction to make "findings" with respect to the 2010 Supplement and "its effect on liability, based on the premise that "a plain reading of the [2010 Supplement] *may* lead to the conclusion that [Carpetland] has no obligation under the 2010 [L]ease and that Sandock is releasing the corporation from its obligation under the 2000 [L]ease." *Aschenbrenner*, at *5 (emphasis added). As such, the Aschenbrenner's purported conclusion that they no longer incurred liability by virtue of the 2010 Supplement was not yet set in stone. Only after the trial court evaluated the enforceability of the 2010 Supplement and its release of the Achenbrenners as guarantors of the 2000 Lease provisions, did

the Aschenbrenners' claim hold true. Therefore, as Sandock's arguments presented to the trial court advocating the continued liability of the Aschenbrenners as guarantors under the 2000 Lease were not groundless, we affirm the trial court's denial of attorney fees pursuant to I.C. § 34-52-1-1. *See Breining v. Harkness*, 872 N.E.2d 155, 161 (Ind. Ct. App. 2007) ("A claim or defense is 'groundless' if no facts exist which support the legal claim presented by the losing party."), *trans. denied*.

## 2. *Appellate Attorney Fees*

[40] The Aschenbrenners also request appellate attorney fees pursuant to Indiana Appellate Rule 66(E). "[A] discretionary award of damages has been recognized as proper when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Orr v. Turco Mfg. Co.*, 512 N.E.2d 151, 152 (Ind. 1987). In considering a request for appellate attorney fees, we exercise extreme restraint because of the potential chilling effect upon the exercise of the right to appeal. *Plaza Group Properties, LLC v. Spencer Co. Plan Comm'n*, 911 N.E.2d 1264, 1274 (Ind. Ct. App. 2009), *trans. denied*.

[41] Indiana appellate courts have formally categorized claims for appellate attorney fees into substantive and procedural bad faith claims. *Boczar v. Meridian Street Found.*, 749 N.E.2d 87, 95 (Ind. Ct. App. 2001). To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and arguments are utterly devoid of all plausibility. *Id*. Procedural bad faith, on the

other hand, occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. *Id.* Even if the appellant's conduct falls short of that which is "deliberate by design," procedural bad faith can still be found. *Id.*

[42] With respect to substantive bad faith, the Aschenbrenners reference Sandock's argument with respect to the 2010 Supplement, "an argument raised and rejected in the first appeal," and the lack of argumental clarity in Sandock's claim regarding the restitution of the garnished funds. Again, we reiterate that the enforceability and scope of applicability of the 2010 Supplement was not decided until the trial court's February 27, 2014 order, which is the subject of the instant appeal. Furthermore, although we agree that Sandock's argument on restitution is convoluted and difficult to comprehend, we hasten to point out that this argument is merely one of five claims he presented to this court. Standing alone, this defect falls short of the utter lack of plausibility required to award attorney fees based on substantive bad faith. *See Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003).

[43] In support of their procedural bad faith argument, the Aschenbrenners refer to the numerous extensions of time requested by Sandock, as well as the lack of references to the transcript and appendix in Appellant's Brief. It should be noted that the extensions of time complained of were duly brought before the motions panel of this court and granted as such. And whereas Sandock's

compliance with Indiana Appellate Rule 46(A)(2) is sporadic at best, his appellate brief is not completely devoid of appropriate references so as to "substantially impede our ability to expeditiously consider" his claims. *See id.* at 347. In sum, while Sandock's appellate brief is by no means perfect, the defects complained of are not of a level that permeates his appeal with meritless or vexatiousness. *See Boczar*, 749 N.E.2d at 95. Therefore, we deny the Aschenbrenners' request for appellate attorney fees.

## CONCLUSION

Based on the foregoing, we affirm the trial court's denial of Sandock's motion for summary judgment as well as the trial court's denial of the Aschenbrenners' request for attorney fees.

Affirmed.

Kirsch, J. and Bailey, J. concur