## NATIONAL HAME AND CHAIN COMPANY *v.* ROBERTSON.

[No. 12,837.   Filed March 15, 1928.   Rehearing denied June 19, 1928.
Transfer denied January 7, 1930.]

*Charles D. Kelso, Louis B. Ewbank* and *P. J. Lauck,* ·for appellant.

*George H. Hester,* for appellee.

McMahan, J.—Appellee, as the alleged owner and seller of a carload of soft steel bands, brought this action in the Floyd Circuit Court to recover the price thereof. The complaint is in four paragraphs. The first paragraph is for goods and merchandise alleged to have been sold to appellant. The second paragraph alleges that ·appellant agreed to purchase the steel "at the price prevailing at the mill" where manufactured, and sets out certain correspondence which it is claimed constituted the contract; that the steel was shipped to appellant and accepted by it. The third paragraph is similar to the second. The fourth paragraph alleges that appellee is a broker in iron and steel products; that appellant is a manufacturer of hames and chains; that appellant authorized appellee to furnish it with a carload of soft steel bands for use in its business; that thereafter, and before the steel was delivered, appellee notified appellant he would sell and deliver the steel to appellant at a later date in the same year, the price to be that of the official

schedule of the mill by which it was made at the time of shipment; that appellant agreed to pay the price so quoted by appellee, but that, later and before the delivery thereof, appellant notified appellee it would only pay therefor the price ruling at the date of shipment; that appellee refused to sell and deliver for the price proposed by appellant, but notified appellant the price was to be the official schedule of the mill manufacturing the same at date of shipment; that thereafter appellee delivered the car of steel to appellant; that appellant received, accepted and used the same, well knowing the terms upon which the same was sold to it by appellee and knowing the price appellant would be expected to pay therefor; that, according to the official schedule of the mill, the price was $5.80 per 100 pounds; that the steel so sold and shipped and accepted by appellant weighed 50,020 pounds; that there had been a long and vexatious delay in payment, and demanding judgment for the purchase price with interest.

Appellant filed a motion to strike out parts of the third paragraph of complaint, and appellee filed a demurrer to the fourth paragraph of appellant's answer to the second paragraph of complaint. The issues of law thus submitted were taken under advisement, and, not being determined within 90 days thereafter, appellee filed his written application calling the attention of the regular judge to the failure to determine the issues so presented, and asking that such issues be withdrawn from such judge and that a special judge be appointed, as provided for in §603 Burns 1926. This application was sustained, and a special judge appointed. The venue was afterwards changed to Jefferson county. The court, on request, found the facts specially and stated its conclusions of law thereon. There was a judgment in favor of appellee for $3,832.43.

The errors assigned in this court are that the court

erred: (1) In sustaining appellee's application to withdraw the issues of law from the regular judge and in appointing a special judge; (2) in sustaining appellee's demurrer to the fourth paragraph of answer to the third and fourth paragraphs of complaint; (3) in each conclusion of law; and (4) in overruling appellant's motion for a new trial.

Appellee insists that no question is presented concerning the action of the regular judge in appointing a special judge, or the action of the special judge in refusing to remand the cause to the regular judge. It is appellee's contention that such rulings should have been assigned as reasons for a new trial, and not as independent assignments of error in this court.

Section 420 of the Civil Code, §610 Burns 1926, cl. 1, provides that a new trial may be granted for "Irregularity in the proceedings of the court, jury, or prevailing party, or any order of court, or abuse of discretion, by which the party was prevented from having a fair trial."

The application to withdraw the issues from the regular judge was the same, in principle and effect, as a motion and affiavit for a change of judge, and it is well settled that the action of the court in sustaining or in overruling an application for a change of judge or for a change of venue must be assigned as a ground in the motion for a new trial if the party is in a position to file such a motion, and, if not assigned, it is waived. *Scanlin* v. *Stewart* (1894), 138 Ind. 574, 37 N. E. 401, 38 N. E. 401; *Southern R. Co.* v. *Roach* (1906), 38 Ind. App. 211, 78 N. E. 201. And we hold that appellant, having failed to assign the rulings of which complaint is made as grounds for a new trial, cannot present them on appeal by an independent assignment of errors. If this were not so, we would be compelled to transfer this appeal to the Supreme Court for want of jurisdiction, as it is appellant's contention

that the provision of said §603, *supra*, requiring the trial court to decide all issues of law within 90 days from submission, is unconstitutional.

The fourth paragraph of answer to which a demurrer was sustained alleged that, before the commencement of this action, appellee claimed he shipped the steel to appellant under its written order of May 14, 1920, which is set out in full; that, after the commencement of the action, appellee undertook to change his claim against appellant by alleging in the third paragraph of the complaint that he shipped the steel to appellant under a contract made up by a letter from appellee to appellant, dated May 12, 1920, and appellant's acceptance thereof; and that, by his fourth paragraph of complaint, appellee sought to change his position by claiming there was no contract except an implied contract on the part of appellant to pay a named sum.

In support of this contention, appellant says: "Where a party gives a reason for his conduct and decision touching any matter involved in a controversy, he cannot, after litigation has begun, change his ground and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by settled principles of law," and that the facts alleged in the third and fourth paragraphs of complaint as grounds for recovery are entirely different from the grounds upon which appellee claimed appellant was liable to him before the commencement of the action.

In *Cadick Milling Co.* v. *Valdosta Grocery Co.* (1920), 72 Ind. App. 534, 126 N. E. 240, cited by appellant, the appellee sued the appellant for damages on account of the breach of an alleged contract by which appellee purchased certain flour of appellant. Appellant claimed it was justified and excused from shipping the flour on the ground that appellee gave no shipping directions.

When appellant was called upon to ship the flour, it refused to do so solely on the ground that the contract had expired by limitation. In this connection, the court said: "In view of this fact appellant may not, after suit is brought for a breach of the contract, change from its former position, and base its refusal to ship such flour on another and different ground. . . . It follows as a matter of course that, after appellant had repudiated the contract by declaring that it had expired by limitation, it was not incumbent on appellee thereafter to furnish further shipping specifications and instructions."

*Kenefick* v. *Shumaker* (1917), 64 Ind. App. 552, 116 N. E. 319, was an action for damages because of a breach of a contract to convey real estate, where the defendant refused to perform because the abstract of title "did not show a clear title." When sued, the defendant undertook to defend because of the plaintiff's failure to deliver possession of certain property to the defendant. It was held that the defendant had waived the breach of the contract occasioned by the delay in obtaining possession, the court, at page 561, saying: "It is well established that a party to a contract, in refusing to comply with its terms, cannot base his refusal on one ground and, when action is brought for its breach, defend on another and different ground."

In each of the other cases cited by appellant, the defendant had given one ground as an excuse for his failure to comply with the contract, and, when sued, had set up a different ground as reason for such refusal. Clearly none of the cases cited is of any controlling influence in the instant case.

It was not necessary for appellee, prior to the commencement of this action, to claim that appellant was liable to him on any particular ground or theory, and, if appellee did, that would not prevent

him from thereafter attempting to hold appellant liable on other theories. A choice of remedies is not binding on a party plaintiff unless the remedy chosen has been prosecuted to a conclusion. *Cohoon* v. *Fisher* (1896), 146 Ind. 583, 44 N. E. 664, 45 N. E. 787, 36 L. R. A. 193.

The doctrine of equitable election is not applicable to the facts pleaded. *Walker, Admr.*, v. *Bement* (1911), 50 Ind. App. 645, 94 N. E. 339. There was no error in sustaining the demurrer to this paragraph of answer.

The court found appellee was a jobber, buying and selling iron and steel products; that, about May 1, 1920, appellant requested and authorized appellee to arrange and contract to have manufactured for and delivered to appellant a quantity of steel bands, not to exceed 25 tons; that, on May 12, 1920, appellee wrote a letter to appellant, stating, in substance, that the mill could enter specifications for a carload for prompt acceptance and shipment some time in the third quarter of 1920, the price to be the official schedule of the mill at the time of shipment. In reply to this letter, appellant, under date of May 14, 1920, wrote a letter to appellee ordering one car of soft steel, "not to exceed 25 tons, to be shipped the last quarter of 1920, at the price ruling the date of shipment." No other or further communication took place between the parties until November 17, 1920, and appellee did not agree to furnish the steel for any price other than as stated in his letter of May 12. Soon after May 12, appellee, in order to supply appellant with the steel, entered into a contract with the Pittsburgh Steel Company for the manufacture of the steel for appellee for the use of appellant as stipulated in the letter of May 12. By this contract, appellee agreed to pay to said company its official schedule at time shipment was made. Under this contract, said company manufactured steel to the amount of 50,020 pounds, and delivered the same

to a common carrier to be shipped to New Albany for appellant. On the day of shipment, the company's price to the consumer was $5.80 per 100 pounds, and to appellee as a broker $5.30 per 100 pounds. On November 16, 1920, appellee notified the railroad at New Albany that the car of steel had been shipped and directed the railroad and its agent, upon the arrival of the car, to immediately deliver it to appellant. On November 17, appellee notified appellant that the steel had been shipped, and that the railroad had been instructed to promptly turn the steel over to appellant. Appellant, on the next day, wrote a letter expressing surprise that the steel had been shipped, and saying it had no record of having ordered the same, and asking appellee what the steel was that had been shipped, and appellee's authority for shipping the same. In reply to this letter, appellee, on November 19, wrote a letter to appellant calling appellant's attention to its order of May 14, as the authority for the shipment. A day or two after this letter was received by appellant, it wrote a letter to appellee stating that its records showed that the order had been cancelled, and the price was to be "price ruling date of shipment," and, referring to the Iron Trade Review, says the price should be $2.35, plus 25 cents extra per 100 pounds, or $2.60 f. o. b. Pittsburgh, and closing with the statement that it could not accept the car unless it was billed that way.

The court found that other letters were written by each of the parties concerning the matter, in which appellee insisted that appellant must accept the car as billed at the schedule price of the mill in force at date of shipment, and that, if appellant did not settle the bill at maturity, suit would be commenced. This last letter was received by appellant December 12, 1920, and, on the next day, the car arrived at its destination, and, acting on the order of appellee, the railroad delivered

the same to appellant. Appellant accepted the car of steel from the railroad, paid the freight thereon, and appropriated the same to its own use, knowing that appellee was demanding and was expecting to receive as the price thereof $5.80 per 100 pounds, and that appellee did not intend and was not willing to sell the same for any other or less sum. The steel so shipped was in exact accordance with the proposition of appellee dated May 12. It is also found that, at that time, it was very difficult to purchase steel at any price, and that, during the time mentioned, there was no fixed market price for such steel, although there were various sales of such steel in and around New Albany, Indiana, and Cincinnati, at prices higher than that charged appellant; that the only price ruling at date of shipment was $5.80, which was the price ruling at the mill where this steel was manufactured; that said steel was of the value of $2,901.16; that appellant has paid nothing for said steel, but that, on April 2, 1923, it deposited with the clerk of the court for the use of appellee $1,300.52, which remained in the hands of the clerk and which had not been accepted by appellee. Upon these facts, the court concluded, as a matter of law, that appellant, in accepting, appropriating and using the steel, became liable to appellee for the price theretofore demanded by it, to wit, $2,901.16, with interest in the sum of $931.27.

Appellant next contends the court erred in its conclusions of law. This contention seems to be based upon the theory that appellant's letter or order dated May 14 was not an unconditional acceptance of the proposal made by appellee under date of May 12; that the order of May 14 was a rejection of appellee's proposal and was a counter-proposition made by appellant to appellee to purchase the steel on terms different from those contained in appellee's proposal of May 12. Appellant, in support of this contention,

argues that its order of May 14 meant, among other things, that it "proposed to pay for the steel at the price ruling day of shipment"; that "shipment" meant that appellee should deliver the possession of the steel to a common carrier for transportation to appellant as consignee, and that the "price ruling date of shipment" meant the market price the day of shipment and not the price which the manufacturer might fix at time of shipment. This contention cannot prevail. From the facts found by the court, it appears that, about May 1, 1920, appellant authorized appellee to arrange and contract to have manufactured for appellant a quantity of steel bands for use in its business. Appellee was not a manufacturer, but was engaged by appellant as a broker, and, on May 12, appellee wrote a letter to appellant stating he could enter the order for not less than a carload of steel for prompt acceptance sometime during the third quarter of 1920, the price to be the official schedule of the mill manufacturing the steel at the time of the shipment, and in reply appellant wrote a letter to appellee directing it to enter appellant's order for a car of steel "at the price ruling the date of shipment." When these two letters are read together, the last an answer to the first, the only reasonable construction to be placed upon the reference in the last letter to the price is that it referred to the price as stated in appellee's letter of May 12, and that the price, as understood by both parties, was the official schedule of the mill at the time of the shipment. Appellee was justified in so construing appellant's order of May 14. Appellee did so construe the contract, and later, when the question of appellant's accepting the steel arose, and before appellant accepted it, appellant knew the construction appellee had placed on the contract, and that, if appellant accepted the steel, it would have to pay $5.80 per 100

pounds. With this knowledge, appellant accepted the steel and used it in its business.

Appellant also contends that, under the terms of the contract, the steel was to be delivered to a transportation company and consigned to appellant, and that the fact that the steel was consigned to the Tower Manufacturing Company conclusively showed that the title was in that company, and there is no finding that the title ever passed to either appellant or appellee. Appellee was the owner of all the capital stock of the Tower Manufacturing Company, and caused the steel to be delivered to appellant. The latter company does not appear to have ever made any claim that the property was unlawfully delivered to appellant, and it would not seem that the simple fact that the steel was consigned to that company is conclusive evidence that the title was not vested in appellant when the steel was delivered to it.

And we hold there was no error in the conclusions of law.

Appellant also complains of the admission of certain evidence, but there is no showing what objection, if any, was made to the admission of any of the evidence of which complaint is made.

The next contention is that the finding of facts is not sustained by sufficient evidence. This contention is in the main based upon the theory that the agreement was to the effect that appellant was to pay the market value of the steel instead of the mill's schedule; that the steel was the property of the Tower Manufacturing Company, and that the title never passed to appellant. We have already discussed these contentions in construing the facts as found by the court, and do not deem it necessary to further discuss the questions, since the facts were fully found and set out in the special finding. · The evidence

is in our judgment ample to sustain the facts as found.
Judgment affirmed.
Dausman, J., absent.