# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**CHARLES P. RICE**
Boveri Murphy Rice, LLP
South Bend, Indiana

ATTORNEY FOR APPELLEE,
Fostcorp Heating and Cooling, Inc.:

**THOMAS L. KIRSCH**
Thomas L. Kirsch & Associates, P.C.
Munster, Indiana

ATTORNEYS FOR APPELLEE,
Wilson Iron Works, Inc.:

**PAULA E. NEFF**
**CHRISTINA J. MILLER**
Lucas, Holcomb & Medrea
Merrillville, Indiana

ATTORNEY FOR APPELLEE,
Johnson Carpet, Inc.,
d/b/a Johnson Commercial Interiors:

**TIMOTHY W. WITHERS**
Philip D. Burroughs & Associates, LLC
Indianapolis, Indiana

FILED
Aug 20 2014, 9:31 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GOODRICH QUALITY THEATERS, INC. and RONCELLI, INC. | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 64A03-1308-PL-318 |
| | ) | |
| FOSTCORP HEATING AND COOLING, INC., WILSON IRON WORKS, INC., JOHNSON CARPET, INC., d/b/a JOHNSON COMMERCIAL INTERIORS, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

**August 20, 2014**

**OPINION - FOR PUBLICATION**

**ROBB, Judge**

Case Summary and Issues

Goodrich Quality Theaters, Inc. ("Goodrich") and Roncelli, Inc. ("Roncelli") (collectively, "Roncelli") appeal the trial court's judgment in favor of Fostcorp Heating and Cooling, Inc. ("Fostcorp"), Wilson Iron Works, Inc. ("Wilson Iron"), and Johnson Carpet, Inc. d/b/a Johnson Commercial Interiors ("Johnson Carpet") (collectively, "the appellees") on various breach of contract claims, foreclosure of mechanics' liens, and the award of attorney fees that all stem from construction of the Portage 16 IMAX movie theater ("the theater"). Roncelli raises the following issues, which we consolidate and restate as: (1) whether the trial court's retroactive decree that its May 1, 2012 order was a final judgment renders Roncelli's appeal untimely; (2) whether the trial court erred in interpreting Roncelli's contract with Wilson Iron; (3) whether the trial court erred in interpreting Roncelli's contract with Johnson Carpet; and (4) whether the trial court erred in awarding attorney fees to the appellees. Concluding the appeal was timely filed and the

2

judgments are supported by the findings, but it was an abuse of discretion for the trial court to award attorney fees, we affirm in part and reverse in part.

## Facts and Procedural History

Goodrich leased a property in Portage, Indiana, from Spirit Master Funding III, LLC ("Spirit Master") with permission to construct the theater upon the land. Goodrich hired the architectural firm Paradigm Design, Inc. ("Paradigm") to create design drawings for the theater. Roncelli was hired as the general contractor. Roncelli engaged Wilson Iron, Fostcorp, and Johnson Carpet as contractors. Wilson Iron was to provide the work, materials, and labor for the structural steel of the theater; it contracted Falpeg Capital, LLC, d/b/a Gooder-Henrichsen, Inc. ("Gooder") and Gateway Construction as subcontractors. Fostcorp was to provide and install all necessary elements of the heating, ventilation, and air conditioning systems ("HVAC"); Fostcorp engaged Sheet Metal Werks, Inc. and Air Temp Mechanical as subcontractors. Johnson Carpet was contracted for the carpet installation in the theater. Construction on the theater began in the summer of 2006, with an anticipated completion date of November 2006. Due to delays in construction and poor weather, the theater did not open until January 12, 2007.

### *Roncelli and Wilson Iron*

In July 2006, Roncelli and Wilson Iron executed a contract in the amount of $1,095,000 for Wilson Iron's portion of building the theater. Wilson Iron was responsible for all of the structural steel and roof decking for the project, including joists and joist girders. The contract documents included a Purchase Order Contract, a Project Manual, Paradigm's Design Drawings, and the Steel Joist Institute Manual ("the SJI"). Two of the

3

particular drawings that contributed to construction delays were structural drawings S105 and S106, depicting roof framing plans. These plans were "top down" drawings, drawn from the perspective of one looking down on the roof of the theater. The plans show the joist girders and roof deck, among other things. Paradigm's intent in designing the building was to have the HVAC pass through openings in the joist girders.[1] Paradigm used a broken or dashed line in the shape of an hourglass on top of the joist girder with the word "opening" and a dimension to indicate where the HVAC ductwork would pass through (the "hourglass mark"). This marking was not standard for the industry and did not appear in the SJI, in the legend of the diagram, or anywhere else in the contract materials. Per the SJI, the industry standard, "SP" is supposed to mark any joist girder that is not standard on a structural drawing and the drawing should include a designation, note, or additional drawing to describe what makes the joist girder non-standard or special.

The hourglass mark was meaningless to Wilson Iron as it related to the structural steel, so Wilson Iron ignored it. Wilson Iron and its subcontractors generated shop drawings and erection or placement drawings for all of the structural steel work. The shop and erection drawings approved by Roncelli and Paradigm called only for standard joist girders. These drawings were submitted to, and approved by, Roncelli and Paradigm. Gooder then created the joists and joist girders in accordance with those drawings. On August 28, 2006, Wilson Iron delivered the first set of joist girders to the theater site, and

---

[1] A joist girder is "a primary structural load-carrying member with an open web system designed as a simple span supporting equally spaced concentrated loads of a floor or roof system acting at the panel points of the member and utilizing hot-rolled or cold-formed steel." Appendix of Wilson Iron at 455. A standard girder has diagonal and vertical web members. Id. at 76. A non-standard, or "Vierendeel panel" or "Vierendeel opening," is a rectangular opening that requires some of the webbed members to be removed. Id.

at that time, an employee from Paradigm told Wilson Iron the girders were to have non-standard openings. Wilson Iron wanted to shut the project down while the joist girder situation was resolved, but both Roncelli and Paradigm insisted the erection continue using the standard joist girders. The next day, Wilson Iron submitted a concept sketch to Roncelli and Paradigm to modify the joist girders that would cost an additional $28,000 for Wilson Iron to make the changes. Roncelli did not respond to this sketched proposal. Wilson Iron sent a fax to Gooder, placing Gooder on notice of a claim for non-conforming work; Roncelli, though, did not issue a notice of non-conforming work to Wilson Iron.

On October 3, Roncelli requested a meeting with Gooder and Wilson Iron and asked if a fix could be done in place. The structural steel had been fully installed at this point, and Gooder responded that the fix could not be done as proposed. The work was eventually completed and Roncelli paid Wilson Iron's invoices for the joist girder work; in February 2007 Roncelli refused to make further payments to Wilson Iron for work performed after the joist girder installation. Wilson Iron timely filed its Sworn Statement and Notice of Intention to Hold Mechanic's Lien on April 14, 2007 for $275,475.

*Roncelli and Fostcorp*

In July 2006, Roncelli executed a contract with Fostcorp in the amount of $760,000 for Fostcorp to install the HVAC system in the theater. The installation of the HVAC system was delayed due to the confusion surrounding the joist girders. Fostcorp eventually received three proposed modifications for how to adjust the HVAC to accommodate the standard joist girder openings. Fostcorp prepared cost estimates for the three changes, totaling $277,799.42. Roncelli approved these estimates. Due to the changes, Fostcorp

did not have sufficient manpower to complete the modifications in Roncelli's timeframe, so Roncelli contracted Area Sheet Metal to assist Fostcorp. Roncelli approved changes to Fostcorp's initial contract by an additional $283,896 to cover the expense of the modifications and extra labor. Roncelli paid Fostcorp a total of $552,000. Fostcorp then recorded a Mechanic's Lien on April 4, 2007 in the amount of $379,985.56, the amount unpaid under the contract. Fostcorp also served upon Goodrich a Notice to Hold Owner Personally Liable, plus interest and services for the work performed on the theater.

*Roncelli and Johnson Carpet*

In October 2006, Roncelli asked Johnson Carpet to quote a price to install carpet in the theater. Roncelli informed Johnson Carpet that Milliken was the carpet manufacturer, and Johnson Carpet received specifications from Milliken. Johnson Carpet determined that the specifications from Milliken did not match Paradigm's drawings and alerted Roncelli of the apparent calculations error. Roncelli directed Johnson Carpet to use Milliken's specifications. Johnson Carpet's proposal on October 10 specified it would install 4970 square yards of Milliken carpet for $41,808.55, subject to the following conditions:

1. Price for installation of owner supplied carpet.
2. Price includes the cost of carpet adhesive.
3. Price does not include any trims, vinyl base, transitions or other flooring types.
4. Price includes minor floor prep based on an estimate of 20 total man hours. If additional time or materials are required approval by the GC will be obtained in the form of an AWA.

Appendix of Appellee Johnson Carpet, Inc. d/b/a Johnson Commercial Interiors at 6. On November 23, Johnson Carpet submitted a revised proposal to Roncelli ("November 23 Contract") in the amount of $42,297.20 which added "cut-ins," reduced installation costs,

and added a fifth qualification: "5. Price does not include CTP-2 @ IMAX studio entry. If IMAX entry is to have CPT-2 as shown on print add $580.00." Id. at 1. Roncelli accepted this proposal then later tendered to Johnson Carpet a Purchase Order Contract dated December 22, 2006 ("Purchase Order Contract"). The Purchase Order Contract varied from the November 23 Contract in several ways: it required Johnson Carpet to complete the carpet installation work for the theater (not just 4970 square feet as in the November 23 Contract) and it added the terms of the Roncelli Project Requirements, Project Insurance Requirements, Emergency Numbers, and Project Schedule as part of the contract. Appendix of Appellants Goodrich Quality Theaters, Inc. and Roncelli, Inc. at 486. The Purchase Order Contract also added in the terms of two additional attachments, and decreased the value of the contract to $42,297.00. Id. On January 11, Johnson Carpet made another proposal to Roncelli, this time in the amount of $62,156 ("January 11 Proposal"). This included the original $42,297.20, plus additional costs for walk-off carpet in the entry, floor prep costs for work in excess of twenty hours, travel, and down-time during a union discrepancy. On January 15, Roncelli and Johnson Carpet spoke again about the carpet material calculations and the supply shortage. Roncelli ordered an additional 900 square yards of carpet to complete the theater. After making the January 11 Proposal, Johnson Carpet signed the Purchase Order Contract on January 19, 2007. Id.

On January 24, Johnson Carpet submitted a Contractor's Application for Payment and Change Order Request to Roncelli. In March 2007, Roncelli issued a check to Johnson in the amount of $35,340.30 (the same amount listed as due on the Application for Payment) but stopped payment on the check before it was negotiated. Johnson Carpet

timely recorded its Sworn Statement and Notice of Intention to Hold Mechanic's Lien for the sum of $55,420.00 on May 27, 2009.

*Trial Court Proceedings*

On May 14, 2007, Fostcorp filed a complaint to foreclose its mechanic's lien, be awarded costs and attorney fees, be declared to have priority over all other claimants, and demanding judgment against Roncelli for $379,985.56, plus interest, and demanding judgment against Spirit Master as owner. Spirit Master, Goodrich, Roncelli, Wilson Iron, and others were all named as defendants in the suit as they had interests in the property.[2] Wilson Iron filed a cross-claim and counterclaim to foreclose its mechanic's lien and recover costs and attorney fees, and be declared to have priority over other lienholders. Wilson Iron also sought to recover money from Spirit Master, Goodrich, and Roncelli jointly and severally under theories of quantum meruit and unjust enrichment, and against Roncelli for breach of contract. Roncelli then cross-claimed against Wilson Iron for breach of contract. Johnson Carpet was allowed to join the suit as an intervening plaintiff and, like the others, sought to foreclose its mechanic's lien against the property. Johnson Carpet also asserted claims of breach of contract, fraud, and dishonor of check against Roncelli. Roncelli counter-claimed against Johnson Carpet, alleging breach of contract.

The trial court held a bench trial across fourteen days in August 2009, November 2009, May 2010, and July 2010. On May 1, 2012, the court issued an "Order from Long-Going Bench Trial" ("May 1 Order"). The trial court found in favor of Fostcorp and against

---

[2] Johnson Carpet was not added at this stage because it had yet to file its mechanic's lien against the property and had no recorded interest. There were also other parties who filed claims and cross-claims who are not relevant to the appeal.

Roncelli and Goodrich in the principal amount of $369,783.33, plus pre-judgment interest in the amount of $120,179.48, compounded at a rate of eight percent (8%) per annum. The court also found in favor of Wilson Iron and against Roncelli in the principal amount of $77,795.01, plus pre-judgment interest in the amount of $25,283.38, compounded at a rate of eight percent (8%) per annum. The court made no judgment or determination as to the claims involving Johnson Carpet at that time. The order also specifically stated that the claims for attorney fees would be heard in a separate proceeding.

Then, on July 18, 2013, the trial court issued "Order from Long-Going Bench Trial Johnson Carpet, Inc." ("July 18 Order"). That order read in part:

> Upon the completion of a long-going bench trial where witness testimony was given, exhibits were produced, and evidence taken, this Court entered its Judgment our [sic] May 1, 2012, "Order From Long-Going Bench Trial." That Order disposed of most all claims properly presented by the parties to this litigation and was a final judgment. Yet, disputes between Intervening Plaintiff JOHNSON CARPET, INC. d/b/a/ JOHNSON COMMERICAL INTERIORS, (hereinafter "Johnson Carpet"), and RONCELLI, INC., (hereinafter "Roncelli"), went unresolved. Specifically, in the May 1st, 2012, Order, this Court stated as follows:

>> This Court makes no judgment, determination or order with regard to JOHNSON CARPET . . . since it did not participate in the submission of their proposed findings of fact and conclusions. Roncelli did include JOHNSON CARPET . . . in its filing but was not sufficient for this court to act at this time. Further proceedings will need to be had to determine their claims.

> Since that time when judgment was entered, this Court has been made aware of the certainty that Johnson Carpet did indeed file stamp copies of its own Proposed Findings of Fact and Conclusions of Law . . . on January 31, 2011. Because judgment and determination regarding the issues between Johnson Carpet and Roncelli were withheld without judgment, determination or order . . . the Court now attends to those claims. . . .

Brief of Appellants Goodrich Quality Theaters, Inc. and Roncelli, Inc. at 97-98. With respect to Johnson Carpet, the trial court found it was entitled to recover against Roncelli in the amount of $55,420.20 plus pre-judgment interest for breach of contract. The court found for Roncelli on Johnson Carpet's fraud and dishonor of check claims. On July 19, the trial court entered an award of attorney fees in favor of Fostcorp, against Roncelli. The court amended its May 1 Order and entered the following judgments on August 9, 2013: "Fostcorp against Roncelli is amended from $489,962.81 to $539,139.11, plus attorney fees . . . for a total of $636,312.24; Fostcorp against Goodrich is amended from $489,962.81 to $539,139.11; Wilson Iron against Roncelli is amended from $373,888.22 to $412,751.84, plus attorney fees . . . for a total of $723,928.74." App. of Appellants Goodrich Quality Theaters, Inc. and Roncelli, Inc. at 641. Roncelli and Goodrich filed their Notice of Appeal of the May 1 and July 18 Orders on August 12, 2013. Additional facts will be provided as necessary.

Discussion and Decision

I. Timeliness of Appeal

A. Standard of Review

A timely notice of appeal is a jurisdictional prerequisite. Neu v. Gibson, 968 N.E.2d 262, 269 (Ind. Ct. App. 2012) trans. denied. Unless the appellants file an appeal within thirty days after entry of judgment, the right to appeal shall be forfeited. Id., Ind. Appellate Rule 9(A)(5).

B. Roncelli's Notice of Appeal

As a preliminary matter, we must address whether Roncelli's notice of appeal was timely filed. Wilson Iron asserts the May 1 Order was a final judgment from which Roncelli should have appealed, and because Roncelli did not file the notice of appeal until August 2013, this appeal is not timely.[3] We disagree.

A party initiates an appeal by filing a notice of appeal within thirty days after the entry of a final judgment in the Chronological Case Summary. App. R. 9(A)(1). A judgment is final if it disposes of all claims as to all parties. App. R. 2(H)(1). A judgment may also be final when the trial court in writing expressly determines that there is no just reason for delay and in writing expressly directs the entry of judgment as to at least one, but not all, claims or parties, and that the parties may take an appeal upon the issue resolved by the judgment. Id., T.R. 54(B). Here, the May 1 Order did not resolve issues between all the parties (the claims involving Johnson Carpet had yet to be resolved), nor did it include the express, written language as required by Rule 2 to make the judgment final. Despite the trial court's statement in the July 18 Order that the May 1 Order was final, simply referring to it as such later without including the requisite language in the original order is not enough to make it so. Therefore, it was not a final judgment from which Roncelli could have appealed. Roncelli's present appeal is timely.

## II. Breach of Contract

### A. Standard of Review

---

[3] Johnson Carpet does not take a position on this issue; Fostcorp agrees with Roncelli that the May 1 order was not a final judgment, and therefore, this appeal is timely.

The trial court entered extensive findings and conclusions in its order, so our standard of review is two-tiered.

> [W]e determine whether the evidence supports the trial court's findings, and we determine whether the findings support the judgment. We will not disturb the trial court's findings or judgment unless they are clearly erroneous. Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and the conclusions which rely upon those findings. In determining whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom.

Infinity Products, Inc. v. Quandt, 810 N.E.2d 1028, 1031 (Ind. 2004) (citation omitted). We do not reweigh evidence or assess witness credibility. The Blakley Corp. v. EFCO Corp., 853 N.E.2d 998, 1002 (Ind. Ct. App. 2006). While findings of fact are reviewed under the clearly erroneous standard, appellate courts do not defer to conclusions of law, which are reviewed de novo. Fraley v. Minger, 829 N.E.2d 476, 482 (Ind. 2005). "We may affirm the trial court's judgment on any legal theory supported by the trial court's factual findings, even if this theory is one different from that selected by the trial court." Lawyers Title Ins. Corp. v. Pokraka, 595 N.E.2d 244, 249 (Ind. 1992). Roncelli, as the party appealing from a negative judgment, must show that the evidence, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court. Infinity Products, Inc., 810 N.E.2d at 1032.

Additionally, our standard of review for interpreting a contract is de novo. Gerstbauer v. Styers, 898 N.E.2d 369, 379 (Ind. Ct. App. 2008). The goal of contract interpretation is to ascertain and give effect to the parties' intent as evidenced by the language of the agreement. Reuille v. E.E. Brandenberger Constr., Inc., 888 N.E.2d 770,

771 (Ind. 2008). If the language is clear and unambiguous, it must be given its plain and ordinary meaning. Id. A document is not ambiguous merely because parties disagree about a term's meaning; rather, language is ambiguous only if reasonable people could come to different conclusions as to its meaning. Univ. of S. Indiana Found. v. Baker, 843 N.E.2d 528, 532 (Ind. 2006).

> We interpret a written contract by reading the contract as a whole, and we attempt to construe the language so as to not render any words, phrases, or terms ineffective or meaningless. Thus, we must accept an interpretation of the contract which harmonizes its provisions. If the language of the contract is unambiguous and the intent of the parties is discernible from the written contract, the court must give effect to the terms of the contract.

Hilbert v. Conseco Servs., L.L.C., 836 N.E.2d 1001, 1008 (Ind. Ct. App. 2005) (citations omitted), trans. denied, cert. denied 549 U.S. 884, 127 S. Ct. 237, 166 L. Ed. 2d 147 (2006).

## B. Breach of Contract as to Wilson Iron

Roncelli makes several arguments for how the trial court erred in interpreting its contract with Wilson Iron: (1) the trial court's construction of the contract rendered symbols on the structural drawings meaningless; (2) the trial court did not enforce terms requiring Wilson Iron to notify Roncelli of defects in the plans and improperly construed ambiguities against Roncelli; and (3) the trial court applied tort law principles of fault in a contract dispute.

## 1. Interpretation of Hourglass Mark

Roncelli first challenges the trial court's conclusion that the hourglass mark used on drawings S105 and S106 was meaningless. We interpret a contract de novo. Gerstbauer, 898 N.E.2d at 379. Roncelli argues that a court must attempt to construe language of a

contract so as not to render any words, phrases, or terms ineffective or meaningless, so any interpretation that effectively "reads out" the hourglass mark is erroneous. Roncelli maintains that the contract unambiguously shows the hourglass marks were openings in the joist girders with the HVAC ductwork running through the openings. Wilson Iron, on the other hand, believes the contract and drawings are unambiguous in the requirement that all of the joist girders be standard.

We agree with Wilson Iron that the drawings unambiguously show the joist girders were to be standard.[4] The hourglass symbol is not an industry-standard mark relating to joist girders as provided in the SJI, nor is it described in any of the other contract documents, or in the legend on the drawings.[5] Thus, the mark did not modify the type of joist girder required on the project. We are mindful that we are to interpret the contract as to not render any words, phrases, or terms ineffective or meaningless, and we are to accept an interpretation that harmonizes its provisions, Hilbert, 836 N.E.2d at 1008; however, the

---

[4] To be clear, structural drawings S105 and S106 are roof framing plans that contain information relating not only to the joist girders, but also information relating to multiple other components of the structure for which Wilson Iron was not responsible. This is not a case where the hourglass mark was overlaid only on a depiction of joist girders; there were multiple components to these design drawings that conveyed a wide array of information to the different trades working on the theater. Inherently, some of these markings were overlaid on top of the structural steel and joist girder markings. While Wilson Iron had a duty to discovery ambiguities in the plans, Roncelli recognized that Wilson Iron's review was "made in the Contractor's capacity as a contractor and not as a licensed design professional unless specifically provided in the Contract Documents. The [C]ontractor is not required to ascertain that the Contract [D]ocuments are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations." Br. of Appellants Goodrich Quality Theaters, Inc. and Roncelli, Inc. at 13 (quoting Roncelli's Project Manual). It is for this reason that we find no ambiguity in the drawings: there was a clear manifestation of intent for the joist girders to be standard. Any additional markings on the design drawings simply did not apply to those joist girders and it was not Wilson Iron's duty to question the work of other trades of which it had no knowledge.

[5] Roncelli relies on PBI Elec. Corp. v. United States, 17 Cl.Ct. 128, 130 (1989). In PBI Elec. Corp., contract drawings contained a "dot symbol" that was not industry standard; the legend listed a "dot symbol" with the term "telephone device" beside it. Id. at 131. The dispute hinged on the meaning of the dot. The court found the dot ambiguous, and determined that because the ambiguity was patent and the contractor did not inquire as to the meaning of the dot, the ambiguity must be construed against the contractor. Id. at 132-33. However, this is easily distinguishable from the present case, as there was no clarification in the legend or anywhere else to alert Wilson Iron that the mark was subject to multiple, conflicting meanings.

construction that Roncelli urges is simply not supported by the language of the contract. The contract documents specified a way to manifest the intent of having a special or non-standard joist girder opening, and that marking was not used. Further, there were no elevation drawings (which show a cross-section, or side view) in the contract documents to show or describe any special joist girder. Reading the hourglass mark to represent a non-standard joist girder opening thus explicitly conflicts with the contract requirements. We therefore conclude Wilson Iron complied with the terms of the contract in supplying standard joist girders.

### 2. Notice of Defects and Construing Ambiguities

Roncelli next argues that Wilson Iron had a duty to discover and bring ambiguities in any of the plans to Roncelli's attention. The Roncelli Project Manual included a provision that all bidders were responsible to advise Roncelli of any conflicts or ambiguities which might affect the work. Indiana law also supports this contract provision: "a contractor has a duty to discover defects in plans or specifications, that are reasonably discoverable or patent, and to warn the contractee or architect of the defects, even if the plans and specifications are supplied by the contractee." St. Paul Fire & Marine Ins. Co. v. Pearson Constr. Co., 547 N.E.2d 853, 858 (Ind. Ct. App. 1989), trans. denied. It is a question of fact whether a contractor knew or should have known plans were defective. Id.

Wilson Iron and its subcontractors found no ambiguities in the plans of which to notify Roncelli. After a full hearing, the trial court concluded that Wilson Iron and its subcontractors did not know, nor should they have known, the meaning of the hourglass mark. The evidence supports the trial court's finding that Wilson Iron and Gooder did not

know, nor should they have known, that the plans were defective.  Therefore, Wilson Iron complied with its duty to alert Roncelli of any defects–there simply were none to report.[6]

## 3. Application of Tort Principles

Roncelli's last contention regarding Wilson Iron is that the trial court applied principles of tort in a breach of contract case, which was clearly erroneous.  Specifically, Roncelli challenges the following conclusions of law:

> 23.  Thus, the initial mistake, the use of the "hourglass" or "bowtie" symbol rather than the "SP" symbol to signify special steel joists and joist girders, was caused by Paradigm, an agent of Goodrich, while acting in the ordinary and usual scope of the business.  A principal is bound by the acts of its agent taken within the ordinary and usual scope of the business.  Therefore, the Court holds Goodrich responsible for the initial mistake that caused the miscommunication in the IMAX project.

> 28.  Both Paradigm and Roncelli were aware that they had intended special joist girders, not standard joist girders.  Both had the responsibility under the SJI standards to review and approve shop drawings from Gooder.  Both did review and approve Gooder's proposed Joist Placement Plans that called for standard joists only.  Thus, both Paradigm, as an agent of Goodrich, and Roncelli, both independently and as an agent of Goodrich, are at fault for the failure to correct any misunderstandings caused by their initial ambiguous designs.  Instead, Roncelli and Paradigm's approval of Gooder's Joist Placement Plans, calling for standard joist girders only, created actual authority so to act because it was reasonable for Gooder and Wilson Iron to believe that the approval of the Joist Placement Plans meant that Roncelli and Paradigm intended them to use standard joist girders rather than special joist girders.  Gallant Ins. Co. [v. Isaac, 751 N.E.2d 672, 675 (Ind. 2001)].

> 29.  Therefore, this Court holds Goodrich, through its agents Paradigm and Roncelli, and Roncelli, independently as general contractor, responsible and at fault for the steel joist girder miscommunication and for all delays and problems that occurred directly as a result of said miscommunication. Wilson Iron and Gooder fulfilled the terms of their contracts and are due payment for their service.

---

[6] Because we find the contract was unambiguous, we need not address Roncelli's argument that the ambiguities should be construed against Wilson Iron.

Br. of Appellants Goodrich Quality Theaters, Inc. and Roncelli, Inc. at 97-98.

> A "clearly erroneous" judgment can result from application of the wrong legal standard to properly-found facts, and in that situation we do not defer to the trial court. We are not bound by the trial court's characterization of its results as "findings of fact" or "conclusions of law." Rather, we look past these labels to the substance of the judgment and will review a legal conclusion as such even if the judgment wrongly classifies it as a finding of fact.

Fobar v. Vonderahe, 771 N.E.2d 57, 59 (Ind. 2002). "We may affirm the trial court's judgment on any legal theory supported by the trial court's factual findings, even if this theory is one different from that selected by the trial court." Lawyers Title Ins. Corp, 595 N.E.2d at 249.

We agree that the trial court improperly based recovery for Wilson Iron on tort principles. However, the findings support the judgment in favor of Wilson Iron based on breach of contract. To prove breach of contract, a plaintiff (here, Wilson Iron) must show the existence of a contract, the defendant's breach of that contract, and damages. U.S. Fid. & Guar. Ins. Co. v. Hartson-Kennedy Cabinet Top Co., Inc., 857 N.E.2d 1033, 1039 (Ind. Ct. App. 2006). It is undisputed a contract existed between the two, and the trial court found Wilson Iron completed its work per the contract, and Roncelli had yet to pay in full for that work. These findings support the judgment in favor of Wilson Iron on the theory of breach of contract.

## C. Breach of Contract as to Johnson Carpet

Roncelli contends the trial court erred in several ways in interpreting its contract with Johnson Carpet: (1) the trial court allowed Johnson Carpet to change theories after trial; (2) some of the trial court's conclusions of law were inconsistent; (3) the trial court

should have found the written contract, not the implied contract, as controlling; (4) the court admitted and relied upon parol evidence; and (5) the court should have found the contract was supported by consideration.[7]

## 1. Change of Trial Theory

Roncelli asserts the trial court erred by allowing Johnson Carpet to change its theory of the case after trial, or allowing Johnson Carpet to "mend the hold." Br. of Appellants Goodrich Quality Theaters, Inc. and Roncelli, Inc. at 46. Roncelli's premise is that Johnson Carpet sued upon the written Purchase Order Contract, stipulated to its execution, and then after trial argued for the first time that the Purchase Order Contract failed for lack of consideration. The common-law principle of "mending the hold" limits the right of a party to a contract suit to change his litigation position mid-case. The case Roncelli cites for support is based on Illinois common law, as discussed by the Seventh Circuit in Harbor Ins. Co. v. Continental Bank Corp., 922 F.2d 357 (7th Cir. 1990).[8] Essentially, the doctrine prohibits a party from changing positions during litigation[9] not "on the basis of further inquiry through pretrial discovery or otherwise but only because the . . . court threw cold water on their argument. . . ." Id. at 365.

---

[7] Roncelli also raises an argument for the first time in its reply brief that the trial court's finding of fact 21 was unsupported by the evidence. Roncelli has forfeited this argument by raising it for the first time in the reply brief without raising it in its principal brief. Monroe Guar. Ins. Co. v. Magwerks Corp., 829 N.E.2d 968, 977 (Ind. 2005); App. Rule 46(C) ("No new issues shall be raised in the reply brief.").

[8] Though Roncelli also cites to Nat'l Hame & Chain Co. v. Robertson, 90 Ind. App. 556, 161 N.E. 851, 853 (1928), that case did not specifically address "mending the hold"; rather, it used the phrase only to quote the appellant's argument that was not accepted by the court. Id. at 853

[9] This doctrine is related, but not identical to, judicial estoppel. Whereas judicial estoppel prohibits a party from taking different positions in separate litigation, mending the hold prohibits the change during the same litigation. Harbor Ins. Co. v. Cont'l Bank Corp., 922 F.2d 357, 364 (7th Cir. 1990).

Johnson Carpet counters that it did not change its litigation position or theory, and that its breach of contract claim materially relied upon the November 23 Contract at the time it was filed. It supports this position with the following evidence: Johnson Carpet attached the November 23 Contract as an exhibit to its complaint; Johnson Carpet contended in submissions to the trial court at least before March 4, 2009, that the Purchase Order Contract "purported to append numerous new terms and conditions to the agreement between Johnson and Roncelli," App. at 571; that during depositions, opening statements, and cross-examination, Johnson Carpet referred to the November 23 Contract and the fact that the Purchase Order Contract was not the only contract. Roncelli has not shown that the evidence leads unerringly to the conclusion that Johnson Carpet changed its litigation theory post-trial. The evidence presented to the trial court shows Johnson Carpet was relying not only on the Purchase Order Contract as evidence, but also the November 23 Contract (as the pleading explicitly refers to the Purchase Order Contract, the November 23 Contract, the January 11 proposal, and emails between Johnson Carpet and Roncelli collectively as "the Contract"). See App. of Appellants Goodrich Quality Theaters, Inc. and Roncelli, Inc. at 186-99. The trial court then did not err in allowing Johnson Carpet to proceed on this theory.

### 2. Inconsistent Conclusions of Law

Roncelli next argues the trial court's conclusion that Roncelli and Johnson Carpet had an implied contract is inconsistent with the court's conclusion that they were bargaining up to January 31, 2007, and that implied contract finding is inconsistent with written contracts on January 19 and February 1. We note that Roncelli has not specifically

identified the conclusions of law it deems inconsistent; rather, it generally describes the conclusions it wishes to challenge and this encumbers our review of the issue. Nonetheless, we reject Roncelli's argument. We find no inherent inconsistencies in the fact that parties entered into a contract and then later renegotiated as the need arose, and the trial court's findings of fact support these conclusions. The judgment is not clearly erroneous on this point.

### 3. Implied vs. Written Contract

Next, Roncelli maintains that even if there was an implied contract with Johnson Carpet, the written contract is conclusive as opposed to the implied contract and the trial court failed to merge the contracts. "[A] written contract is presumed to embody the parties' entire agreement and merge within it all prior negotiations." Keystone Square Shopping Ctr. Co. v. Marsh Supermarkets, Inc., 459 N.E.2d 420, 422 (Ind. Ct. App. 1984). Roncelli's position though rests on the premise the Purchase Order Contract is a valid contract into which the November 23 Contract could merge. The trial court found, and we agree, as discussed further below, that the Purchase Order Contract was invalid for want of consideration. Therefore, the November 23 Contract could not merge with it, and the terms of the Purchase Order Contract cannot take priority over the implied contract. The judgment is not clearly erroneous on this point.

### 4. Use of Parol Evidence

Roncelli insists the trial court should only have looked to the Purchase Order Contract as the entire scope of the agreement, and erred by relying on parol evidence. The parol evidence rule provides:

[W]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence . . . of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing. This rule effectuates a presumption that a subsequent written contract is of a higher nature than earlier statements, negotiations, or oral agreements by deeming those earlier expressions to be merged in to or superseded by the written document.

Hinkel v. Sataria Distrib. & Packaging, Inc., 920 N.E.2d 766, 768-69 (Ind. Ct. App. 2010) (citations and quotations omitted). There are instances when the use of parol evidence is appropriate:

[P]arol evidence may be considered if it is not being offered to vary the terms of the written contract, and to show that fraud, intentional misrepresentation, or mistake entered into the formation of a contract. Moreover, our supreme court has held that parol evidence may be considered to show the nature of the consideration supporting a contract. In addition, parol evidence may be considered to apply the terms of a contract to its subject matter and to shed light upon the circumstances under which the parties entered into the written contract.

Krieg v. Hieber, 802 N.E.2d 938, 944 (Ind. Ct. App. 2004) (citations omitted).

Here, the trial court did not err in admitting the parol evidence. The evidence was properly used to show consideration, or lack thereof, in forming the contract. Johnson Carpet also brought a claim of fraud against Roncelli; though it was ultimately unsuccessful, the evidence was still admissible for that purpose. Id.

### 5. Consideration for the Purchase Order Contract

Finally, Roncelli contends that Johnson Carpet forfeited the issue of consideration by failing to raise it as an affirmative defense.

Johnson Carpet concedes it failed to plead lack of consideration as an affirmative defense, but maintains Roncelli was not prejudiced by this omission. Ordinarily, an

affirmative defense is waived if not specifically pled in the answer or raised at trial. JKL Components Corp. v. Insul-Reps, Inc., 596 N.E.2d 945, 952 (Ind. Ct. App. 1992), trans. denied. When a party fails to raise an affirmative defense, the critical inquiry on appeal is "not whether the defendant could have raised his affirmative defense earlier but whether the defendant's failure to raise the affirmative defense earlier prejudiced the plaintiff." City of S. Bend v. Dollahan, 918 N.E.2d 343, 350 (Ind. Ct. App. 2009) (citation and quotation omitted), trans. denied. Roncelli must show it will be deprived of or seriously hindered in the pursuit of some legal right if the issue of lack of consideration is permitted. Id. Roncelli has failed to meet this burden. Despite Roncelli's contention that it was prejudiced because it was unable to cross-examine Johnson Carpet's witnesses on this issues or call its own, Roncelli still had the burden of proving in its breach of contract claim that a valid contract existed, with an offer, acceptance, and consideration, even if Johnson Carpet did not claim lack of consideration. Further, Johnson Carpet maintained its own breach of contract claim against Roncelli. Johnson Carpet's claim was based on the several documents which it referred to as "the contract": the Purchase Order Contract, the November 23 Contract, the January 11 proposal, and emails between Johnson Carpet and Roncelli. This pleading is sufficient to put Roncelli on notice of Johnson Carpet's position and not deprive it of legal rights.

Forfeiture notwithstanding, Roncelli argues the trial court erred by concluding the Purchase Order Contract was not supported by consideration. "The party urging the validity of a contract bears the onus of proving its existence." OVRS Acquisition Corp. v. Cmty. Health Servs., Inc., 657 N.E.2d 117, 125 (Ind. Ct. App. 1995), trans. denied. Parties

22

may freely modify a contract just as they would enter a contract: modification requires an offer, acceptance, and consideration (a bargained-for exchange). Henthorne v. Legacy Healthcare, Inc., 764 N.E.2d 751, 759 (Ind. Ct. App. 2002). The trial court concluded there was an offer, acceptance, and consideration for the November 23 Contract. It went on to conclude there was no consideration for the modification. The burden is on Roncelli, who is appealing the negative judgment, to prove that the evidence leads unerringly to a conclusion opposite that reached by the trial court. Though Roncelli maintains there was consideration for the Purchase Order Contract, it fails to point us to any such evidence. Therefore, the trial court did not err in finding the Purchase Order Contract lacked consideration.

### III. Award of Attorney Fees

#### A. Standard of Review

Finally, we turn to the issue of whether the trial court abused its discretion in awarding attorney fees to the appellees and against Roncelli pursuant to Indiana Code section 32-28-3-14. The general rule in Indiana is each party to the litigation must pay his or her own attorney fees. City of Jeffersonville v. Envtl. Mgmt. Corp., 954 N.E.2d 1000, 1013 (Ind. Ct. App. 2011). However, attorney fees may be authorized by some other mechanism, such as rule, statute, or agreement, and under those circumstances, the trial court is afforded broad discretion in awarding attorney fees. Id. at 1012. We will only reverse an award of attorney fees on appeal if an abuse of discretion is apparent on the face of the record. Hill v. Davis, 850 N.E.2d 993, 996 (Ind. Ct. App. 2006).

#### B. Award of Attorney Fees

Wilson Iron, Johnson Carpet, and Fostcorp all base their claims for attorney fees after recovering a judgment to enforce a mechanic's lien on Indiana Code section 32-28-3-14:

> (a) Except as provided in subsection (b), in an action to enforce a lien under this chapter, a plaintiff or lienholder who recovers a judgment in any sum is entitled to recover reasonable attorney's fees. The court shall enter the attorney's fees as a part of the judgment.
>
> (b) A plaintiff may not recover attorney's fees as part of the judgment against a property owner in an action in which the contract consideration for the labor, material, or machinery has been paid by the property owner or party for whom the improvement has been constructed.

The purpose of mechanic's lien statutes is "to make a property owner an involuntary guarantor of payments for the reasonable value of improvements made to real estate by the physical labor or materials furnished by laborers or materialmen." Premier Inv. v. Suites of Am., Inc., 644 N.E.2d 124, 130 (Ind. 1994) (emphasis added). The crux of Roncelli's argument is the mechanic's lien statutes in Indiana Code chapter 32-28-3 only apply to the property owners, and as it is not a property owner, the mechanic's lien and subsequent attorney fees cannot be enforced against it. We agree.

It is evident on the face of each of Wilson Iron's, Johnson Carpet's, and Fostcorp's Notice of Intention to Hold Mechanic's Lien that the appellees intended to hold a lien against the real estate and the rights, titles, and interests of the owner of the real estate. App. of Appellants Goodrich Quality Theaters, Inc. and Roncelli, Inc. at 152, 193, 106. As Roncelli is not the owner of the real estate or the structure, a mechanic's lien cannot be enforced against it and subsequent attorney fees under that code provision are inapplicable.

Therefore, each award of attorney fees based on Indiana Code section 32-28-3-14 against Roncelli must reversed.

### Conclusion

We conclude Roncelli's Notice of Appeal was timely filed and the judgment is supported by the findings, but it was an abuse of discretion for the trial court to award attorney fees.

Affirmed in part and reversed in part.

RILEY, J., and BRADFORD, J., concur.